Good morning, Your Honors, and may it please the Court. My name is Tom McHugh. I'm a third-year law student at the University of Notre Dame, appearing under the supervision of Attorney Robert Palmer on behalf of the appellant, Mr. Jesse Swinson. Your Honors, Mr. Swinson has been incarcerated for nearly 17 years on charges of white-collar fraud. While his current habeas petition does not challenge his underlying conviction, Mr. Swinson is challenging several decisions made by the Wisconsin Department of Corrections to waitlist, then summarily remove him from eligibility for the Earned Release Program, or ERP, created under Wisconsin Statute 302.05. Your Honors, this Court should reverse the decision of the District Court for three main reasons. First, because the District Court erred in concluding that Mr. Swinson failed to properly present his federal constitutional claims before the state court. Second, and alternatively, even should this Court find Mr. Swinson's claims procedurally defaulted, it should nevertheless excuse the defaults and hear the merits of those claims in order to avoid a fundamental miscarriage of justice. And third, because waitlisting and then summarily removing Mr. Swinson from eligibility for the ERP resulted in a violation of his constitutional rights to equal protection and due process and acted as an ex post facto law. Moving to the first point, Your Honors, a habeas corpus petition must survive procedural defaults before a federal court may address the merits of the petition. The District Court in this case, Your Honors, incorrectly concluded that Mr. Swinson's claims were procedurally defaulted because they failed to raise a federal constitutional issue in the state courts. However, this Court has held in Wilson v. Briley that four factors are used to determine whether a petitioner has successfully raised federal constitutional claims before a state court. Importantly to this case, Your Honors, are whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right and whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. In this case, Your Honors, it's not contested that Mr. Swinson did raise his constitutional claims before the federal District Court. And indeed, Mr. Swinson's claims before the federal court stem from the same pattern of facts as all of his claims before the state courts. Additionally, Mr. Swinson's state court pleadings framed his constitutional claims in terms so particular as to call to mind a specific constitutional right which satisfies this court standard under Wilson. Further, Mr. Swinson references the very phrases of the federal constitution in his claims, citing to the due process and equal protection clauses and claiming that the Wisconsin Department of Corrections' way of administrating the earned release program acted as an ex post facto law. And so any conclusion that Mr. Swinson failed to properly raise these constitutional claims must simply ignore the plain text of the documents that he submitted before the state courts as they explicitly reference these constitutional claims. Is it enough just to say my due process rights were violated? Respectfully, Your Honor, no, it's not. It involves both pleading federal constitutional claims and the underlying facts surrounding the case. However, because Mr. Swinson's claims before the federal court were held and it's agreed they did, in fact, raise these federal constitutional claims and they involve the same underlying facts, it stands to reason that when he pled those same facts before the state court, in combination with citing directly to the explicit language of the constitution, that he did, in fact, sufficiently raise these claims. In the alternative, Your Honors, even should this court find Mr. Swinson's claims procedurally defaulted, it should nevertheless excuse the default in order to avoid a fundamental miscarriage of justice as this court has held to be the standard in Byers v. Basinger. Your Honors, while traditional habeas corpus petitions are held to, or rather, traditional habeas corpus petitions seeking an excuse for procedural defaults are held to an actual innocent standard, it bears mentioning that such a standard is inapplicable in this case as Mr. Swinson is not challenging his underlying conviction. Instead, this court should evaluate the fundamental miscarriage of justice issue in light of the specific facts of this case, including the charges against Mr. Swinson,  and in light of this court's precedent in U.S. v. Schmitz, that it's the fact rather than the length of incarceration that matters for the purpose of deterring white-collar crime. One of the things you raised is about the exclusion from the, what is it, drug rehab program? Yes, Your Honor. And did he have a drug problem? Respectfully, Your Honor, the record is not entirely clear, and that's in large part because the Wisconsin Department of Corrections never conducted an evaluation of Mr. Swinson for eligibility for this program. Nevertheless, it found it, they did decide to wait list him for the program, presumably acting upon some underlying indicia that he did meet minimum criteria for participation. Then it summarily removed him from that wait list without hearing or explanation. Well, wasn't there a change in the statute, a couple of changes in the statute? First, it was for drug and alcohol rehab. Then it was broadened, and then it was narrowed again, right? Respectfully, Your Honor, the changes to the ERP, it's now called the Drug Related to Drug and Alcohol Abuse Program, have facially changed it, the terms of the statute. However, the substance of the program have remained the same, and Mr. Swinson's challenge is to the decisions made by the Wisconsin Department of Corrections and their officials in the administration of that program, again, which has not changed throughout these. Okay. So the theory is that he has a protected liberty interest when he is declared wait list eligible. Is that right? That's correct, Your Honor. Can you, for a program that he might or might not ever get into and might or might not ever complete successfully, right? Respectfully, Your Honor, it's the appellant's position that he was, in fact, admitted when wait listed. He was merely awaiting his opportunity to participate. I thought he was told he was wait list eligible. A program review committee report provides only that he has wait list ERP potential. He's left then for about 11 months until his next evaluation, at which he is summarily denied access to the program. Okay. So I guess that seems like a pretty tenuous claim of entitlement to liberty. Respectfully, Your Honor, the Supreme Court and Logan v. Zimmerman Brush Company acknowledge that if a state creates an entitlement or mutual expectation, that an inmate will be released from parole. An entitlement, yes. Being told you're eligible to be on the waiting list for this program where you might be able to earn this earlier release sounds a little short of an entitlement to me, but I'm... Respectfully, Your Honor, it's not merely that he was told. Ms. Juswinson asked to participate in the program, and this was the response of the Wisconsin Department of Corrections, was to hold a regularly conducted... Let me put it this way. What's your best support for saying that this sort of conditional possibility amounts to a protected liberty interest? Respectfully, Your Honor, it's that the state of Wisconsin decided to enact this program granting mandatory and immediate release for prisoners like Mr. Swinson, pre-truth and sentencing inmates for immediate and mandatory release, and that further his liberty interest in this matter was increased when the state further decided to place him on that wait list, and that at that point in time it was no longer merely a hope for that participation in the program, but it became more actualized and not one which could be taken away without due process of law. I keep going back to there's generally when you have these programs it's to address a condition, a problem, and that's what I'm... Okay, you know, they're offering this program for... I don't know if it switched back and forth, but you don't even know if the record shows that he had a drug problem. He had a big problem, you know, a big fraud, and then he jumped bail. So, you know, he's got a 29-year sentence. But I don't know if somebody tried to say that's drug-related. Respectfully, Your Honor, the record does reflect at his sentencing hearing Mr. Swinson was encouraged by the sentencing judge to participate in certain programs available within the Wisconsin Department of Corrections. There's also testimony by a family relative at the time that might suggest that he was suffering from some underlying issues. Additionally, programs such as this, of course, never within, or rather that are meant for inmates to participate in, cannot address potentially problems they currently have. Any program would have done that, you know, if there's something to talk about how not to spend somebody else's money, you know, a program, something else that's going on internally. Any one of those he would have tried to get into because that's going to shorten your time, I guess. Absolutely, Your Honor, and Mr. Swinson has completed a number of the programs available to him within the Wisconsin Department of Corrections. He's even applied to ones that he is statutorily not eligible for. However, the earned release program is not one of those. Mr. Swinson meets the eligible criteria, and he was denied nevertheless participation in the program. So the ones that he's taken were not shortening types? The ones that he did participate in weren't sentence shortening? That's correct, Your Honor. I see that my time has expired, and so for the foregoing reasons, we respectfully request this Court reverse the decision of the District Court. Thank you, Mr. McHugh. Thank you. Mr. O'Brien. May it please the Court, there are two major problems with Mr. Swinson's position here. Number one, despite all of his pleadings, all of his affidavits, in every court in the state of Wisconsin and in federal court, he has yet to allege that he was suffering from the sort of alcohol or drug abuse that would have allowed him to participate in whatever program, whether we're talking about the pre-amendment of 302.05 or post-amendment, that statute was always directed at prisoners who are suffering from substance abuse, and it applies to those who successfully complete treatment. The second problem is that we're focusing on the denial of parole. Mr. Swinson never directly challenged the denial of his parole in February of 2010. Parole was denied. He filed an administrative appeal, which was denied, but he did not go into circuit court. Rather, it was only after he was denied reclassification from medium to minimum security at the end of 2010 that Mr. Swinson not only sought administrative review but then sought review in the circuit court for Dane County, and it was there that the circuit court tried its best to decipher his many claims and ultimately concluded that the claim that survived was whether it was arbitrary and capricious for the Program Review Committee, not the Parole Commission, to deny him reclassification to minimum security. The court held that it was not arbitrary and capricious. The Wisconsin Court of Appeals affirmed, again, having to wade through the many confusing claims that he presented before concluding that the one that survived, the one that was sufficiently articulated, was the reclassification claim. He is now challenging the denial of reclassification, and it's too late for him to challenge the denial of parole. Moreover, as is apparent, the record contains a motion for Rule 23a transfer that we filed a year ago that, in the district court, we are allowing Mr. Swinson to be transferred to an institution where he can serve his needs as a reclassified minimum security community-based prisoner. So he's actually received the relief that he requested long ago, which is he is now in minimum security and has been for quite some time. Moreover, in community release, he's actually released into the community on work release, and so— Is that some kind of a halfway house or whatever that's referred to? He's still in a—and I'm going off the record here, but the institution he's now in is called Oak Hill, so he's still under the supervision of that particular institution. I don't know the specifics about whether that allows for placement in a halfway house. It certainly does allow for work release. That's the best I can— That's in terms of my question. Yeah. And, you know, when talking about whether— to properly preserve his—to fairly present his claims in state court, Mr. Swinson couldn't just say I was denied due process, equal protection, ex post facto, First Amendment, whatever, which he did. He had to also present the operative facts. The operative facts are all over the place, and I'll use his own words. I won't read them because I won't have enough time, but I refer to the petition in the lead case here, number 14C-0484 in the district court, and I refer to his statement of the facts in support of the due process claim, which I believe is really the only live claim left here, if any at all. And that is on page— And I just invite the court—it's paragraph 1, pages 7 and 8, actually. I invite the court to read that and see if that coherently sets forth an operative statement of facts. And, moreover, on page 14 of that same petition, Mr. Swinson distills what he said were the six claims that he presented— I'm sorry. Yeah, six claims that he presented to both the Wisconsin court of— the district—the circuit court, rather, and the Wisconsin court of appeals, and claim 6 is the only thing remotely resembling a due process claim. And there's nothing in there about being— nothing in that claim or in the statement of facts in support of claim 2 in the petition about any sort of wait-listing, any sort of entitlement to release. What this really boils down to is his disagreement with how the legislation, section 302.05, has been interpreted, implemented, understood by the state courts, understood by prison administrators, applied to him and to other inmates back in 2010, which really at bottom become matters of state law as to statutory interpretation. And because he didn't really—didn't coherently present his statutory and administrative rule claims to the state courts, those were never reviewed, and there really is no valid federal claim left. Mr. O'Brien, if—imagine another inmate who's in this ERP program, got off the wait-list, is in the program, and is one day short of successful completion. If he were kicked out of the program with one day to go, would there be a potential due process claim there on the theory that he can't be denied that opportunity at the last second because there is an entitlement for immediate release if he's successful? If he's successful. But if he, with one day to go, took heroin, then I think he'd have a hard time. Right, sure. But what if there's a factual dispute about whether he did or not? He's found in possession. He says it was planted on him by another inmate. Who knows? Would he have enough of a liberty interest at that point to have an opportunity to be heard? At the risk of binding future litigation, which I would hate to do, because the statute has mandatory language, I think he would have a pretty good argument that there may be an— I won't ask you for more than that. It's a hypothetical. It's not this case. But that's the logic of the position, right? The logic of the position, and I understand your position to be that at least to the extent there's a due process claim preserved and asserted here, simply that Mr. Swenson's situation never got close to that. Right. And I would conclude by saying that I ask this Court to affirm. I think it should affirm on the ground that these claims were procedurally defaulted because he did not present both the controlling legal principles and the operative facts in support of those principles. But in any event, there was no due process violation because there was no direct challenge to the Parole Commission's decision, and he has never proved or even alleged, for that matter, that he suffered from the sort of substance abuse issues that would entitle him to participation in this program. With that, I will conclude my remarks. Thank you. Mr. McHugh, your time expired, but I'll give you one minute for rebuttal if you have some final remarks. Two very quick points on rebuttal, Your Honors. First, the issue of reclassification and which claims exactly Mr. Swenson pled. The government in this case has sort of conflated those issues as reclassification to minimum security is a requirement for participation in the ERP. These decisions were made contemporaneously, and again the operative facts underlying his claims did not change from his original offender complaint through to the district court where it's agreed. He did, in fact, raise these constitutional claims. Further, Your Honors, with regard to the due process claim, the key is what process, if any, he was given before being removed from the program, not whether or not he is, in fact, a drug or alcohol abuser, but whether or not he was afforded an opportunity to be heard on the matter before he was summarily removed from eligibility. And so for the foregoing reasons, we respectfully request this court reverse the decision of the district court. Thank you. Thank you very much. Mr. McHugh, we appreciate your willingness and that of Mr. Palmer and the clinic at Notre Dame to accept the appointment in this case and the assistance you've been to the court as well as your client. The case is taken under advisement and the court will be in recess.